UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ROGER M. NAUT,           :           No. 07-20280REF

Debtor                          :           Chapter 7

## MEMORANDUM OPINION

## I. INTRODUCTION

This matter arose upon the filing by the United States Trustee ("UST") of a

Motion To Dismiss Pursuant to 11 U.S.C. §707(b) ("Motion To Dismiss"). The UST

maintains that Debtor's case should be dismissed because it is an abuse pursuant to

Section 707(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the

"Bankruptcy Code"), as amended by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA"). Section 707(b) provides for dismissal of a chapter

7 bankruptcy upon the abuse by the Debtor of the provisions of chapter 7. I must address

five issues regarding the Motion To Dismiss. First, were Debtor's debts primarily

consumer or non-consumer debt? If they were primarily non-consumer debt, Section

707(b) does not apply and I would deny the Motion To Dismiss. Second, if the debts are

primarily consumer debt, do Debtor's income and expenses create a presumption of abuse

under Section 707(b)(2)? Third, if the presumption of abuse arises, has Debtor rebutted

the presumption by demonstrating that special circumstances exist? If the presumption

arises and Debtor does not rebut it, thie case must be dismissed or converted.[1]  Fourth, if

the debts are primarily consumer debt and the presumption either did not arise or was

rebutted, do the totality of the circumstances of Debtor's financial situation require

dismissal or conversion as an abuse under Section 707(b)(3)?  Finally, does Section

707(b) violate the equal protection principles of the due process clause of the Fifth

Amendment[2] to the United States Constitution?

   I have determined in this case, based upon the findings of fact and

conclusions of law discussed in this Memorandum Opinion below, that Debtor's debts are

primarily consumer debts and that Section 707(b) is therefore applicable.  I have also

determined, based upon my analysis of Debtor's income and expenses and the means

test,[3] that a presumption of abuse exists under Section 707(b)(2) and that Debtor has not

established the existence of any special circumstances to rebut the presumption.  Even if I

were to conclude, however, that either (i) the presumption of abuse did not arise or (ii) it

arose but was rebutted, I would find, based upon the totality of the circumstances of

---

[1]Conversion can only be ordered, however, upon the debtor's consent.  11 U.S.C.
§707(b)(1).

[2]U.S. Const. Amend. V ("No person shall . . . be deprived of life, liberty, or property,
without due process of law . . ..").  Because the Bankruptcy Code is a federal statute and this
court is a federal court, the Fifth Amendment, rather than the Fourteenth Amendment, of the
Constitution comes into play.  In their briefs, the parties discuss the application to this case of
equal protection, which is often associated with the Fourteenth Amendment.  U.S. Const.
Amend. XIV.  "It is well settled [however,] that the Fifth Amendment's due process clause
encompasses equal protection principles."  Mathews v. deCastro, 429 U.S. 181, 182, n.1 (1976).

[3]11 U.S.C. §707(b)(2).  See the discussion in Section IV. B., at pp. 8 - 10, below, for a
fuller description of the means test.

Debtor's financial situation, that his case is an abusive filing and I would dismiss or

convert it under Section 707(b)(3). I also conclude that Section 707(b) does not violate

the equal protection principles of the due process clause in the Fifth Amendment to the

United States Constitution.


## II. PROCEDURAL BACKGROUND


Debtor filed his chapter 7 Petition, Statement of Financial Affairs, and

Schedules on February 20, 2007. He filed his first Amended Schedules B and C and a

first Amended Statement of Financial Affairs on March 23, 2007. The initial meeting of

creditors was started (but was never completed) on March 29, 2007. On April 5, 2007,

the UST filed the following notice:

> Having reviewed the documents, if any, filed by the debtor and any
> additional documents provided to the United States Trustee, the
> United States Trustee is currently unable to determine whether the
> debtor's case would be presumed to be an abuse under Section
> 707(b) of the Bankruptcy Code.

Debtor filed his second Amended Schedules B and C on May 2, 2007, when

he also amended his Statement of Intent to surrender Debtor's former home located at 717

Heather Lane, Easton, PA ("the Heather Lane home") to the creditors who hold liens on

that property. On May 4, 2007, the UST filed the following Statement of Abuse:

> As required by 11 U.S.C. Sec. 704(b)(1)(A), the United States
> Trustee has reviewed the materials filed by the debtor(s). Having

3

considered these materials in reference to the criteria set forth in 11 U.S.C. Sec. 707(b)(2)(A), and, pursuant to 11 U.S.C. Sec. 704(b)(2), the United States Trustee has determined that: (1) the debtor's(s') [sic] case should be presumed to be an abuse under section 707(b); and (2) the product of the debtor's current monthly income, multiplied by 12, is not less than the requirements specified in section 704(b)(2)(A) or (B). As required by 11 U.S.C. Sec. 704(b)(2) the United States Trustee shall, not later than 30 days after the date of this Statement's filing, either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States Trustee does not consider such a motion to be appropriate. Debtor(s) may rebut the presumption of abuse only if special circumstances can be demonstrated as set forth in 11 U.S.C. Sec. 707(b)(2)(B).

On that same date, the UST filed her Motion To Dismiss and scheduled it for a hearing on May 31, 2007. Debtor filed his opposition to the Motion To Dismiss on May 23, 2007, and on May 24, 2007, Debtor filed his first Amended Schedules I and J and a second Amended Statement of Financial Affairs. The parties presented testimony and exhibits at the hearing on May 31, 2007,[4] and I set a briefing schedule following the hearing. The briefs were filed and this matter is now ripe for my determination.[5] This Memorandum Opinion is written in support of the Order Granting the United States Trustee's Motion To Dismiss Pursuant to 11 U.S.C. §707(b), which follows.

---

[4]In many respects, I did not and do not believe that Debtor's testimony was credible. I do not point to any particular misrepresentations, but I base my finding of his lack of credibility on my overall observation of his demeanor and his responses to counsels' questions.

[5]I inadvertently lost track of the filing of the briefs, which were filed in this case in late August 2007. I learned that the matter was ready for my review on November 30, 2007. The Christmas and New Year holidays and vacations further delayed my resolution of this dispute. I apologize to the parties for the delay.

4

## III. FACTUAL BACKGROUND

On the date that he filed this chapter 7 petition, Debtor was thirty-eight years old and married, and he and his wife had three children. Debtor was employed as the manager of the New York City area office of R.C. Services, LLC, where he oversees insurance investigation and claims adjustment operations.[6] Debtor was paid a gross monthly salary of $11,300 as of the date he filed his chapter 7 petition.[7] Debtor's wife was employed by the Bethlehem Area School District, and was paid gross monthly income of $2,303 as of the date Debtor filed his chapter 7 petition.[8] Debtor stated on his Amended Schedules I and J that his average net monthly household income is $10,346, that his average monthly expenses are $9,137, and that his net monthly household income exceeds the average monthly expenses by $1,209.

At the time Debtor filed for bankruptcy, he owned two properties, which are listed on Schedule A - Real Property. The Heather Lane home was the primary residence

---

[6]Debtor testified that he began working toward establishing his own financial planning business in 2001, when he was working for another such firm as a financial representative. In 2003 or so, Debtor worked for an automobile dealership processing and approving loans. In 2005 or so, Debtor left the dealership to start his own company, which failed by May 2006. Debtor then worked for R.C. Services, LLC, an insurance adjusting and investigative company, where he worked as of the filing of his bankruptcy.

[7]See Debtor's Amended Schedule I, which also reflects that Debtor's net monthly income as of the petition date was $8,648, which includes a monthly travel stipend of $680.

[8]See Debtor's Amended Schedule I, which also reflects that Debtor's wife's net monthly income as of the date Debtor filed his chapter 7 petition was $1,698.

for Debtor and his family when he bought it, but Debtor later decided to sell it to pay the mortgage loans secured by it and to pay certain other debts he owed. Debtor got caught in the dropping real estate market through 2006 and followed the market down, reducing his sale price periodically, but never reducing it enough to sell. Debtor now intends, in his bankruptcy, to surrender the Heather Lane home to the lenders who hold it as collateral. Debtor and his family now reside at 125 Kirkland Rd., Easton, PA ("the Kirkland Road home"), which he purchased in July 2006.

Debtor listed six secured creditors on Schedule D - Creditors Holding Secured Claims, which creditors hold the following secured claims totaling $848,769: (1) A first mortgage against the Kirkland Road home in the amount of $332,868; (2) a second mortgage against the Kirkland Road home in the amount of $41,500;[9] (3) a first mortgage against the Heather Lane home in the amount of $334,901; (4) a second mortgage against the Heather Lane home in the amount of $89,000;[10] (5) a loan secured by a 2005 Nissan Xterra in the amount of $19,600; and (6) a loan secured by a 2007 Nissan Maxima in the amount of $30,900. Debtor listed no priority creditors on Schedule E - Creditors Holding Unsecured Priority Claims, and he listed only seven unsecured creditors, owed the total amount of $97,892, on Schedule F - Creditors Holding Unsecured Nonpriority Claims.

---

[9]The two mortgage debts secured by the Kirkland Road home, which total $374,368, are referred to herein as the "Kirkland Road debt."

[10]The two mortgage debts secured by the Heather Lane home, which total $423,901, are referred to herein as the "Heather Lane debt."

# IV.  DISCUSSION

## A.  The Statutory Framework For Dismissal Pursuant To Section 707(b) Of The United States Bankruptcy Code

On October 17, 2006, the majority of the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 27 (April 20, 2005)

("BAPCPA"), took effect, creating substantial changes to many aspects of the Bankruptcy

Code.  The changes included amendments made by BAPCPA to Section 707(b) of the

Bankruptcy Code, which governs dismissal and conversion of chapter 7 bankruptcy cases.

As amended, Section 707(b) permits a bankruptcy court to dismiss or convert[11] a chapter

7 bankruptcy case filed by an individual debtor whose debts are primarily consumer

debts, if granting the debtor relief would be an "abuse" of the provisions of chapter 7.  11

U.S.C. §707(b)(1).  Section 707(b)(2)(A) requires the bankruptcy court to presume abuse

if application of the statutory formula in Section 707(b)(2)(A) indicates that the debtor

has the ability to pay at least a portion of his debts over time.  11 U.S.C. §707(b)(2)(A).

A debtor can rebut the presumption of abuse only by proving some special circumstance,

such as a serious medical condition or a call to active duty in the Armed Forces, but only

to the extent that the special circumstance justifies additional expenses or adjustment of

---

[11]As stated in footnote 1, supra, conversion may only be ordered under Section 707(b)(1) if the debtor consents.  11 U.S.C. §707(b)(1).

7

current monthly income for which the debtor has no reasonable alternative. 11 U.S.C.

§707(b)(2)(B). If the presumption of abuse does not arise, or arises and is rebutted,

Section 707(b)(3) directs the court to consider whether the filing was an abuse of the

provisions of chapter 7 based upon either the debtor's bad faith filing under chapter 7 or

the totality of the circumstances of the debtor's financial situation. 11 U.S.C. §707(b)(3).

## B. Application Of The Means Test - 11 U.S.C. §707(b)(2)

Before enactment of BAPCPA, Section 707(b) of the Bankruptcy Code

provided a presumption in favor of discharging the debts of a chapter 7 debtor. A party

seeking dismissal under Section 707(b) was required to show that permitting the case to

proceed under chapter 7 would be a substantial abuse of the provisions of chapter 7.

BAPCPA changed this statutory framework by removing the term "substantial." A

chapter 7 case may now be dismissed or converted upon a showing that the grant of relief

under chapter 7 would be only an abuse (not a substantial abuse) of the provisions of

chapter 7. 11 U.S.C. §707(b)(1). In addition, BAPCPA abolished the presumption

favoring discharging a debtor's debts and replaced it with a presumption that the case is

an abuse of chapter 7 if the arithmetical formula in Section 707(b)(2)(A) yields income

equal to or greater than a specified threshold amount. 11 U.S.C. §707(b)(2)(A). This

arithmetical formula is the means test.

8

The means test utilizes a series of calculations to determine if a presumption of abuse arises based on the debtor's projected ability to pay some or all of his debt over time. A debtor's current monthly income, as defined in 11 U.S.C. §101(10)(A), is based on the debtor's average monthly income from all sources for the six full calendar months immediately preceding the bankruptcy filing. If the debtor's annualized current monthly income is equal to or below the state median family income for the same household size, a safe harbor exists and a presumption of abuse will not arise.[12] 11 U.S.C. §707(b)(7). If the debtor's annualized current monthly income exceeds the state median income for the same household size, the debtor's current monthly income must then be reduced by certain standardized and actual expenses, as described in Section 707(b)(2)(A)(ii) through (iv), to determine if a presumption of abuse arises.

Applying the deductions required by Section 707(b)(2)(A)(ii) through (iv) results in the debtor's remaining monthly income. If that remaining income, when multiplied by 60, exceeds or is equal to either: (1) The greater of either (a) $6,575[13] or (b) 25% of the debtor's nonpriority unsecured claims; or (2) $10,950[14], the presumption of

---

[12]Debtor does not argue that he falls within this safe harbor in Section 707(b)(7).

[13]Pursuant to 11 U.S.C. §104(b), this amount is adjusted every three years to account for changes in the cost of living. The $6,575 amount is applicable to cases filed on or after April 1, 2007. For cases filed between October 17, 2005 (the effective date of BAPCPA) and March 31, 2007, the applicable amount was $6,000. This case was filed on February 20, 2007 – the $6,000 amount applies to Debtor in this case.

[14]Pursuant to 11 U.S.C. §104(b), this amount is adjusted every three years to account for changes in the cost of living. The $10,950 amount is applicable to cases filed on or after April 1, 2007. For cases filed between October 17, 2005 (the effective date of BAPCPA) and March 31,

abuse arises. 11 U.S.C. §707(b)(2)(A)(i). If the debtor does not rebut the presumption by showing some special circumstance that justifies additional expenses or an adjustment of current monthly income for which no reasonable alternative exists, 11 U.S.C. §707(b)(2)(B)(i), the court may then dismiss the case or, with the debtor's consent, convert it to chapter 11 or chapter 13. 11 U.S.C. §707(b)(1).

## C. Dismissal For Abuse When Presumption Of Abuse Does Not Arise Or Is Rebutted: 11 U.S.C. §707(b)(3)

BAPCPA also added Section 707(b)(3) to the Bankruptcy Code, which section applies when either the presumption of abuse does not arise under Section 707(b)(2)(A) or was rebutted under Section 707(b)(2)(B)(i). In such a situation, Section 707(b)(3) requires the court to consider if abuse exists by determining either (i) the debtor filed the chapter 7 petition in bad faith or (ii) the totality of the circumstances of the debtor's financial situation constitutes an abuse of chapter 7. 11 U.S.C. §707(b)(3). The application of this provision to this case will be discussed below.

---

2007 – the applicable amount was $10,000. This case was filed on February 20, 2007 - the $10,000 amount applies to Debtor in this case.

**D.  The Debts Scheduled By Debtor Are Primarily Consumer Debts And Section
707(b) Is Applicable To This Case**

Again, Section 707(b) provides that I should dismiss the case of an
individual chapter 7 debtor whose debts are primarily consumer debts if I find that
granting relief would be an abuse of the provisions of chapter 7.  Application of Section
707(b)(1) requires three elements:  (1) The debtor must be an individual; (2) the debts
must be primarily consumer debts; and (3) the granting of relief under chapter 7 would be
an abuse.  In re Croskey, No. 06-33437, 2007 WL 1302571, at *2 (Bankr. N.D. Ohio May
1, 2007).  Debtor obviously does not dispute that he is an individual.  Debtor does
dispute, however, both that (i) his debts are primarily consumer debts and (ii) the grant of
relief would be an abuse of chapter 7.

**1.  Primarily Consumer Debt**

Debtor first argues that his debts are not primarily consumer debt.  Debtor
categorizes the Heather Lane debt as non-consumer debt because:  (1) The Heather Lane
debt is secured by real property and (2) he owned the Heather Lane home with a profit
motive.  Debtor testified that the Heather Lane home was used as his primary residence
from February 2004 when he bought it through July 2006 when he bought the Kirkland
Road home.  Debtor had decided to sell the Heather Lane home in May 2006 to downsize.
Debtor hoped to make a profit on the sale and to use the excess proceeds (after paying off
the Heather Lane debt) to purchase a smaller home and pay off certain credit card debt.

11

### a.  Generally, Debt Secured by Real Property Can Be Consumer Debt

Debtor argues that debts secured by real property are

never consumer debts, relying on legislative history that accompanied the enactment of

the 1978 Bankruptcy Act.[15]  This argument was rejected by the Ninth Circuit in Zolg v.

Kelly (In re Kelly), 841 F.2d 908, 912-13 (9th Cir. 1988),[16] and by the overwhelming

majority of other courts that have considered it.  See, e.g., In re Praleikas, 248 B.R. 140,

144-45  (Bankr. W.D. Mo. 2000); In re Bertolami, 235 B.R. 493, 495-96 (Bankr. S.D.

Fla. 1999); In re Vianese, 192 B.R. 61, 68 (Bankr. N.D. N.Y. 1996);  In re Tindall, 184

B.R. 842, 844 (Bankr. M.D. Fla. 1994); In re Goodson, 130 B.R. 897, 900 (Bankr. N.D.

Okla. 1991).  The Ninth Circuit in Kelly succinctly rejected debtors' reliance upon the

legislative history to support their argument that debts secured by real property are never

consumer debts:

> This argument stands the process of statutory interpretation on
> its head, resorting to legislative history without first
> considering the language of the statute.  As the Supreme
> Court has noted, "legislative history, . . . by traditional canons

---

[15]See Debtor's Brief in Opposition to the United States Trustee's Motion To Dismiss
Pursuant to 11 U.S.C. §707(b), at 7, note 1, in which Debtor cites 124 Cong. Rec. S17,406 (daily
ed. Oct. 6, 1978); 124 Cong. Rec. H11,090 (daily ed. Sept. 28, 1978).

[16]I recognize that Kelly and the other decisions cited in support of Kelly were decided
before BAPCPA was enacted.  The amendments made by BAPCPA to Section 707(b), however,
affected neither (i) the requirement that a debtor's debts be primarily consumer debts for Section
707(b) to be applicable nor (ii) the definition of "consumer debt" (now found in 11 U.S.C.
§101(8), but formerly defined in Section 101(7)).  The analysis by the Kelly court, and the other
courts, of what constitutes "primarily consumer debt" survived the enactment of BAPCPA and
remains good law that I accept today.  See generally In re Livernoche, No. 07-00051, 2007 WL
3406859, at *2, n.3 (Bankr. D. HI November 7, 2007).

of interpretation[,] is irrelevant to an unambiguous statute."
(citations omitted).  Here, resort to legislative history is not
appropriate because the statutory language is clear and
precisely addresses this situation. . . .

The statutory scheme so clearly contemplates that consumer
debt include debt secured by real property that there is no
room left for any other conclusion.

Kelly, 841 F.2d at 912.  I agree with and adopt this analysis; I therefore reject Debtor's

argument that debts secured by real property can never be considered consumer debts.

### b.  The Mortgage Debt Secured by the Heather Lane Home Is Consumer Debt

I next address Debtor's argument that the Heather Lane debt is not

consumer debt because, at one time, he owned the Heather Lane home with a profit

motive.  Debtor concedes that he purchased the Heather Lane home as his primary

residence and continuously used the home as his primary residence from the time he

purchased it (February 2004) until he decided to sell it to downsize (July 2006).  During

this two and one half year period, Debtor also refinanced the first mortgage on the

Heather Lane home and borrowed additional money, which is secured by the second

mortgage loan.  The proceeds from the refinancing and second mortgage were used

primarily to make changes to the home, including landscaping, fencing, and other

improvements.

"Consumer debt" is "debt incurred by an individual primarily for a personal,

family, or household purpose."  11 U.S.C. §101(8)(emphasis supplied).  I must therefore

look to the purpose for which debt was incurred to decide if the debt is within the

13

statutory definition of consumer debt. Kelly, 841 F.2d at 913. Debtor purchased the

Heather Lane home as his primary residence and used it as his primary residence for

almost two and one-half years. Virtually all of the proceeds from the Heather Lane debts

were used to purchase and improve the property, not for a business purpose. In addition,

Debtor did not lease the Heather Lane home to a tenant or use it for any other business

purpose. Although Debtor, like all other homeowners, apparently hoped that the Heather

Lane home would appreciate in value, the objective evidence in the record shows that the

Heather Lane home was purchased and used as Debtor's personal residence. I find that

such use constitutes "family or household purpose" under Section 101(8) of the

Bankruptcy Code. See In re Cox, 315 B.R. 850, 855 (B.A.P. 8th Cir. 2004).

        I wholly agree with the Ninth Circuit's declaration in Kelly, 841 F.2d at

913: "It is difficult to conceive of any expenditure that serves a 'family ... or household

purpose' more directly than does the purchase of a home and the making of improvements

thereon." See also Cox, 315 B.R. at 855; Praleikas, 248 B.R. at 144-45. Because Debtor

purchased and used the Heather Lane home as his family's primary residence and because

the funds obtained by Debtor as the proceeds of the refinancing of (and second mortgage

on) the Heather Lane home were used primarily to improve the Heather Lane home, I find

that the Heather Lane debt is consumer debt.

        c.  The Change in Use of the Heather Lane Home Did Not Affect the Nature of the
        Mortgage Debt as Consumer Debt

        Finally, Debtor argues that the nature of the Heather Lane debt should be

14

reconsidered to be and re-categorized as non-consumer debt because Debtor and his

family vacated their former home and now regard it solely as an investment. I disagree.

As stated above, I will look at the purpose for which the debt was originally incurred to

decide if the debt should be classified as consumer debt. Cox, 315 B.R. at 855;

Bertolami, 235 B.R. at 497. The Heather Lane debt was originally incurred to provide a

primary residence for Debtor and his family and to improve their home. I find that the

Heather Lane debt was incurred for family and household purposes under Section 101(8)

and is therefore consumer debt.

### d. Result of the Heather Lane Debt Being Considered Consumer Debt

Debtor has conceded that $439,912 of his $946,661 scheduled debt is

consumer debt.[17] When I add to this figure the $423,901 of the Heather Lane debt, which

is also consumer debt, a total debt of at least $863,813 is properly categorized as

consumer debt. This figure ($863,813) constitutes more than 91% of Debtor's total

scheduled debt. I conclude, therefore, that Debtor's debts are primarily consumer debts

under 11 U.S.C. §707(b). See Kelly, 841 F.2d at 913:

> "Primarily" means "for the most part."(citing Webster's Ninth Collegiate
> Dictionary 934 (1984)). Thus, when "the most part" - i.e., more than half -
> of the dollar amount owed is consumer debt, the statutory threshold is
> passed.

See also In re Beacher, 358 B.R. 917, 920 (Bankr. S.D. Tex. 2007)(the term "primarily

---

[17]See Debtor's Brief in Opposition to United States Trustee's Motion to Dismiss Pursuant
to 11 U.S.C. §707(b) at 6. $374,368 of the $439,912 amount is the Kirkland Road debt.

consumer debt" under section 707(b) means that more than 50% of the amount of debt is

consumer debt); Praleikas, 248 B.R. at 144.[18]

### 2.  The Grant of Relief Under Chapter 7 in this Case Would Be an Abuse

#### a.  Application of the Means Test Described in Section 707(b)(2) Results in the Presumption of Abuse

I have determined that Debtor's debts are primarily consumer debts.  I next

decide if the grant of relief in this case would constitute an abuse of the provisions of

chapter 7.  I will presume abuse if application of the means test shows that Debtor has the

ability to pay some or all of his debts over time.  11 U.S.C. §707(b)(2)(A)(i).  As

specifically stated in the Bankruptcy Code, if Debtor's "current monthly income reduced

by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not

less than the lesser of - (I) 25 percent of the debtor's non priority unsecured claims in the

case, or $6,575,[19] whichever is greater; or (II) $10,950,"[20] I am obliged to presume abuse.

11 U.S.C. §707(b)(2)(A)(i).  A debtor may deduct from current monthly income "the total

of all amounts scheduled as contractually due to secured creditors in each month of the 60

months following the date of the petition . . .."  11 U.S.C. §707(b)(2)(A)(iii)(I).

---

[18]Because I find that more than 91% of Debtor's scheduled debt constitutes consumer debt, I need not consider whether the remaining 9% of Debtor's scheduled debt (the $57,848 credit card debt and the $25,000 loan to Debtor from his employer) constitute consumer debt to conclude that Debtor's debts are primarily consumer debts under Section 707(b).

[19]See note 13, supra.

[20]See note 14, supra.

16

Debtor has stated his intention to surrender the Heather Lane home to his lenders. Furthermore, Debtor ceased making payments on the Heather Lane debt at least at the time he filed his petition in this case. Debtor did not include any such payment on his Amended Schedule J - Current Expenditures of Individual Debtor. Simply put, Debtor has no intention of making any payments whatsoever on the Heather Lane debt. Debtor argues, however, that he should be permitted to deduct from his current monthly income the monthly payments on the Heather Lane debt because these payments are "scheduled as contractually due." If Debtor were permitted to deduct the payments on the Heather Lane debt, Debtor's current monthly income for means test purposes is reduced below the amount that triggers the presumption of abuse. 11 U.S.C. §707(b)(2)(A)(i). If, on the other hand, the deductions for the Heather Lane debt payments are not permitted, the presumption of abuse arises because Debtor's current monthly disposable income exceeds the minimum described in Section 707(b)(2)(A)(i).

I find, based upon the following discussion, that I should not deduct the payments on the Heather Lane debt. Statutory construction begins with the language of the statute itself. "It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms'." Lamie v. United States Trustee, 540 U.S. 526, 534 (2004)(citations omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."

17

United States v. Ron Pair Ent., Inc., 489 U.S. 235, 240-41 (1989). In determining the

meaning of the statute, "the Court must give meaning and import to every word in a

statute." In re Jass, 340 B.R. 411, 415 (Bankr. D. Utah 2006)(citing Negonsott v.

Samuels, 507 U.S. 99, 106 (1993). The United States Supreme Court has further

instructed:

> Statutory construction is a "holistic endeavor." (citations
> omitted). "A provision that may seem ambiguous in isolation
> is often clarified by the remainder of the statutory scheme -
> because the same terminology is used elsewhere in a context
> that makes its meaning clear, or because only one of the
> permissible meanings produces a substantive effect that is
> compatible with the rest of the law." (citations omitted).

Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2004). I may not be guided by

a single sentence or a part of a sentence, but I must look to all of the provisions of the

whole statute. Philbrook v. Glodgett, 421 U.S. 707, 713 (1975).

I agree with the reasoning expressed by the other Bankruptcy Courts in In re

Harris, 353 B.R. 304, 308-10 (Bankr. E.D. Okla. 2006), and In re Skaggs, 349 B.R. 594,

599-600 (Bankr. E.D. Mo. 2006). Those courts have ruled that they should construe the

phrase "scheduled as contractually due," as used in that section, in conjunction with other

sections of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Such

construction results in the clear result that debts must be included on a debtor's Schedule

J to be deducted from income through the means test. This interpretation requires that

Debtor's Heather Lane debt be listed on a his Schedule J as an expense to qualify for

18

deduction from income, which insures that the debtor will actually be obliged to pay the

expense in the sixty months following the filing of the petition.  Such construction also

best serves the purpose of the means test which "was intended to 'ensure that those who

can afford to repay some portion of their unsecured debts [be] required to do so.'" Harris,

353 B.R. at 309 (quoting In re Hardacre, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006).  As

the court noted in In re Kibbe, 361 B.R. 302, 314 (1st Cir. B.A.P. 2007): "The heart of

[BAPCPA's] consumer bankruptcy reforms consists of the implementation of an

income/expense screening mechanism ('needs based bankruptcy relief' or 'means

testing') which is intended to ensure that debtors repay creditors the maximum they can

afford." (quoting H.R. Rep. No. 109-31, part 1, at 2 (2005)(emphasis supplied).

Interpreting Section 707(b)(2)(A)(iii)(I) as Debtor desires would allow him to deduct

phantom payments that he has no intention of paying and will not be required to pay in

the future, because he intends to surrender the Heather Lane home.

> When a debtor surrenders collateral, the debtor is no longer required to
> make the scheduled payments.  If there is a deficiency after application of
> the collateral proceeds to the indebtedness, an unsecured claim remains
> [which would be discharged in the debtor's chapter 7 bankruptcy], but a
> secured debt no longer exists and no payment is due except for an
> unsecured deficiency balance.  "Indeed, debtors return collateral to secured
> parties for the express purpose of lowering their monthly living expenses."

In re Harris, 353 B.R. at 309, quoting In re Love, 350 B.R. 611, 614-15 (Bankr. M.D.

Ala. 2006).  Debtor would be artificially reducing his current monthly income to defeat

the purpose of the means test and to avoid paying his debts to his creditors, when he could

19

in fact afford to pay.

In addition, "the total of all amounts scheduled as contractually due to
secured creditors in each month of the 60 months <u>following</u> the date of the petition"
should be deducted from current monthly income to arrive at the threshold figure that is
used for means testing. 11 U.S.C. §707(b)(2)(A)(iii)(I) (emphasis supplied). The
dictionary defines "following" as "to go, proceed or come after," "subsequent to," or
"being next in order of time," <u>Merriam-Webster Online Dictionary</u> (2008),
http://www.m-w.com/dictionary/following. Including a loan payment as a deduction
from income must be based on the loan payment actually being due in each of the 60
months after the bankruptcy petition is filed. Only this interpretation properly gives effect
to every clause and word in the statute. See <u>Bell v. United States</u>, 754 F.2d 490, 498-99
(3d Cir. 1985)("It is our duty, under established principles of statutory construction, to
give effect, if possible, to every clause and word of a statute."). "[T]he term 'scheduled'
in terms of §707(b)(2)(A)(iii) also contemplates a forward looking approach. That is, one
schedules something which one expects to take place in the future and not an event which
one plans to avoid." <u>Love</u>, 350 B.R. at 613-14.

<u>Harris</u>, <u>Love</u> and <u>Scaggs</u>, all hold that a debtor cannot deduct payments on
secured debt from his current monthly income under the means test when he intends to
surrender the collateral that secures the debt. I agree with their reasoning and the result.
Debtor cannot deduct the Heather Lane debt payments from his current monthly income.

20

Upon all of the calculations of the means test, my finding of the presumption of abuse

under Section 707(b)(2) is not only mandated, but it is apparent in Debtor's case.[21]

------------------------

[21]If I were to agree with Debtor, however, and permit him to deduct the Heather Lane debt
payments from his current monthly income, the statutory presumption of abuse would not arise,
but I would nevertheless dismiss this case because the totality of the circumstances of Debtor's
financial situation demonstrates abuse under 11 U.S.C. §707(b)(3). When a court finds that the
presumption of abuse under Section 707(b)(2) does not apply or is rebutted, the court remains
obliged to determine, under 11 U.S.C. §707(b)(3), if (i) Debtor filed his petition in bad faith or
(ii) the totality of the circumstances of Debtor's financial situation demonstrates abuse. The UST
has not argued that Debtor filed this Chapter 7 petition in bad faith. For the reasons that follow,
however, I find that the totality of the circumstances of Debtor's financial situation demonstrate
abuse.

BAPCPA has no specific test to determine if the totality of the circumstances of the
debtor's financial situation demonstrates abuse. Several courts, however, have observed that pre-
BAPCA case law is helpful in applying the "totality of the circumstances test" under Section
707(b)(3). In re Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007); see also In re
Masella, 373 B.R. 514, 518 (Bankr. N.D. Ohio 2007). As the Mestemaker court emphasized,
however, "Congress has clearly lowered the standard for dismissal in changing the test from
'substantial abuse' to 'abuse.'" Mestemaker, 359 B.R. at 856. In addition, BAPCPA eliminated
the presumption in favor of granting the debtor a discharge. Mestemaker, 359 B.R. at 856. Even
under pre-BAPCPA case law, "once the Trustee demonstrated a debtor's ability to make
substantial payment on unsecured debt, the burden shifted to the debtor to show his or her
entitlement to Chapter 7 relief. . . . I see nothing in [BAPCPA] or its legislative history to . . .
evidence that [this shifting burden has changed]. " In re Lenton, 358 B.R. 651, 665 (Bankr. E.D.
Pa. 2006).

In the case before me, Debtor clearly has the ability to pay a significant amount of his
debts from his future income. Debtor's Amended Schedule J shows that he has at least $1,209 in
monthly net income. Debtor has steady employment and I was offered no evidence that his
employment situation might change in the future. Debtor will therefore have future disposable
income sufficient to pay a significant amount of his unsecured debt. Finally, Debtor has not
demonstrated that he should be otherwise entitled to chapter 7 relief. I find therefore that the
totality of the circumstances of Debtor's financial situation demonstrates that granting Debtor
relief would be an abuse of the provisions of chapter 7 and that dismissal would therefore be
appropriate under Section 707(b)(3). See Lenton, 358 B.R. at 664-66.

### b. Debtor Has Failed To Demonstrate Any Special Circumstances that Might Rebut the Presumption of Abuse

When the presumption of abuse arises, a debtor may rebut the presumption of abuse created by Section 707(b)(2) "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. §707(b)(2)(B)(i). To establish such special circumstances, a debtor must itemize each additional expense or adjustment of income and provide "(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. §707(b)(2)(B)(ii). The presumption of abuse will only be rebutted if the additional expenses or adjustment of income reduce a debtor's monthly income below the minimum amount necessary for the presumption of abuse to arise, 11 U.S.C. §707(b)(2)(B)(iv), and only if no reasonable alternative is available.

Debtor argues that special circumstances exist in his case because his attempts to start his own business failed and he was unable to sell the Heather Lane home at a profit. The special circumstances necessary to rebut the presumption of abuse, however, "[do] not permit every conceivable unfortunate or 'unfair' circumstance to rebut the presumption of abuse, but includes [sic] only those circumstances that cause higher household expenses or adjustments of income 'for which there is no reasonable

22

alternative,' i.e., they are unforeseeable or beyond the control of the debtor." In re

Lightsey, 374 B. R. 377, 381-82 (Bankr. S.D. Ga. 2007)(footnote omitted).  As one court

aptly observed:

> Under the statutory interpretation canon of ejusdem generis, a
> court is to limit the sphere of permissible "special
> circumstance" to one's having such similar traits and
> characteristics.  This interpretive doctrine, meaning literally
> "of the same kind," holds that a court is to interpret
> legislatively provided examples of a specific nature as typical
> of the general category covered.  United States v. Parson, 955
> F.2d 858, 859, n. 15 (3d Cir. 1992).
>
> The common traits given in the examples provided by
> [Section 707(b)(2)(B)(i)], however, simply do not match what
> the Debtors seek to do.

In re Castle, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006).  This analysis also applies to

the "special circumstances" alleged by Debtor in this case.

        To qualify as a "special circumstance," the circumstance must have traits

and characteristics similar to the two examples expressly noted in Section 707(b)(2)(B)(i).

 I find, however, that Debtor's inability to run a profitable business and his inability to

sell the Heather Lane home for a profit simply do not match the severity or nature of the

examples given in the statute, which are a serious medical condition or a call to active

military duty.  Both of these statutory examples markedly differ from the two

circumstances alleged by Debtor in their severity and as situations that arise from

circumstances that are typically beyond a debtor's control.  Lightsey, 374 B.R. at 381-82;

Castle, 362 B.R. at 851-52.  Debtor could have controlled, among other factors leading to

his economic demise, (i) the length of time and amount of money he devoted to starting

his own business, (ii) the purchase price of the Heather Lane home, (iii) the amount of

improvements that he put into the Heather Lance home, (iv) the timing and the sale price

of the Heather Lane home when he tried to sell it, and (v) the timing and purchase price

of the Kirkland Road home when he bought it.  In addition, Debtor has failed to show that

he had no reasonable alternative available to him to avoid the extra expense or adjustment

of income caused by the "special circumstance." Lightsey, 374 B.R. at 383.  I believe that

did have alternatives to avoid the expenses caused by his alleged "special circumstances."

He could have surrendered the Heather Lane home,[22] which he now intends to do, and he

could have ceased his attempts to establish his own business and take a job with another

employer, which he has also now accomplished.   For all of these reasons, I find that

Debtor has not established "special circumstances" under Section 707(b)(2)(B)(i) to rebut

the presumption under Section 707(b)(1) that his case is an abuse of the provisions of

chapter 7.


**E.  Section 707(b)(2) Does Not Violate the Equal Protection Principles of the Due
Process Clause of the Fifth Amendment to the United States Constitution**

       Finally, Debtor argues that I should deny the UST's Motion To Dismiss

because Section 707(b) of the Bankruptcy Code violates equal protection aspects of the

---

[22]Alternatively, he could have set the sale price for the Heather Lane home lower in the
declining real estate market.

due process clause of the Fifth Amendment to the United States Constitution.

Specifically, Debtor maintains that Section 707(b) violates equal protection because it

creates, and treats differently, two classes of debtors:  Those who owe primarily consumer

debts and those who owe primarily non-consumer debts.  This disparate treatment, Debtor

claims, lacks a rational basis for the distinction between the two classes.  Based upon the

following discussion, I disagree with Debtor's analysis and I find that Section 707(b) does

not violate equal protection aspects of the due process clause.

First, I note that Debtor concedes that the distinction made by Section

707(b) between consumer and non-consumer debtors does not implicate a fundamental

right or affect a suspect class.  Therefore, the rational basis test (rather than the strict

scrutiny test) will be used to examine if Section 707(b).  See Stewart v. United States

Trustee (In re Stewart), 175 F.3d 796, 812 (10th Cir. 1999)(citing United States v. Kras,

409 U.S. 434, 446 (1973)("bankruptcy legislation is in the area of economics and social

welfare" and "no constitutional right exists to obtain a discharge of one's debts in

bankruptcy.").  When a statutory classification neither implicates a fundamental right nor

affects a suspect class, the classification made by the statute is accorded a strong

presumption of validity.  Stewart, 175 F.3d at 812; see also Heller v. Doe, 509 U.S. 312,

319 (1993).  "A statute is presumed constitutional . . . and '[t]he burden is on the one

attacking the legislative arrangement to negative every conceivable basis which might

support it.'"  Heller, 509 U.S. at 320(quoting Lehnhausen v. Lake Shore Auto Parts Co.,

410 U.S. 356, 364 (1973).

The rational relation test dictates that I must determine, "[k]eeping

§707(b)'s strong presumption of validity in mind, .... [if] a rational relationship exists

between the disparity of treatment between consumer and business debtors and some

legitimate governmental purpose." Stewart, 175 F.3d at 812.[23]  I must find Section 707(b)

constitutional if "any reasonably conceivable state of facts" would provide a rational basis

for the distinction between debtors who owe primarily consumer debts and those who

owe primarily non-consumer debts.   FCC v. Beach Communications, Inc., 508 U.S. 307,

313 (1993)  "Where there are plausible reasons for Congress' action, 'our inquiry is at an

end.'" Id. at 313 (citation omitted) ; Stewart, 175 F.3d at 812.  "An economic

classification such as that applied in §707(b) does not fail rational basis review merely

because in practice it results in some inequality." Stewart, 175 F.3d at 812.  The test is,

simply, whether a rational relationship exists between legislation with disparate impact on

different classes and the legislative goals and purposes that the legislation seeks to

address.

Turning to the purpose for the classification created by Section 707(b), the

Supreme Court "never require[s] a legislature to articulate its reasons for enacting a

statute, it is entirely irrelevant for constitutional purposes whether the conceived reason

for the challenged distinction actually motivated the legislature." Beach

---

[23]As discussed at length below, although Stewart is a pre-BAPCPA decision, its holding
remains instructive today.

Communications, Inc., 508 U.S. at 315.  Although I need no statement of legislative

purpose for Section 707(b), the Tenth Circuit found that Congress had two reasons for

originally enacting Section 707(b):

> First, it wanted to address the problem of consumer debtors
> taking inordinate advantage of modern easy-credit practices,
> running up consumer debt, and then seeking discharge of that
> debt through Chapter 7 bankruptcy. (citation omitted).
> Congress apparently felt §707(b) would remedy the problem
> of consumer debtors unfairly taking advantage of Chapter 7
> even though they are able over time to pay off their debts.
> (citations omitted).  Second, Congress wanted to give the
> courts a specific mechanism to more readily dismiss petitions
> by abusive consumer debtors.  As the bankruptcy court aptly
> noted, §707(b) was not enacted to narrow and discourage
> court review of abuse cases to those involving consumer debt,
> but to broaden and encourage such review in light of the fact
> many bankruptcy courts were not dismissing abusive
> consumer petitions.  (citation omitted).

Stewart, 175 F.3d at 812-13.  As the Tenth Circuit recognized, Congress' legitimate

concerns over consumer abuse of chapter 7 continued through the date of the court's

decision in Stewart, 175 F.3d at 813.  I find that these same concerns were widely

publicized as the basis for Congress' decision to enact the changes made by BAPCPA,

including those made to Section 707(b).  BAPCPA, and the amendments of Section

707(b), were enacted by Congress to remedy the abuses that occur when a consumer

debtor receives a discharge of all of his debt despite his ability to repay a portion of it

through a chapter 13 plan.  In re Wilson, 356 B.R. 114, 116-17 (Bankr. D. Del 2006).

Section 707(b) now also prescribes a bright line formula (the means test) that courts can

use to determine more easily when a consumer debtor has the ability, according to

Congress, to pay his creditors and is therefore abusing the spirit of chapter 7.  In re

Fowler, 349 B.R. 414, 420-21 (Bankr. D. Del. 2006).  Congress hoped and intended

BAPCPA to reduce the uncertainty in calculating a debtor's disposable income and to

reduce litigation about a debtor's ability to pay his creditors and a debtor's abuse of the

system.  In re Armstrong, 370 B.R. 323, 328 (Bankr. E.D. Wash. 2007).

The Tenth Circuit determined that the disparate treatment that Congress

established between consumer and business debtors under pre-BAPCPA Section 707(b)

had a rational relationship to a legitimate governmental purpose, and that therefore, pre-

BAPCPA Section 707(b) did not violate the due process clause, finding that:

> Congress' legitimate concern over consumer abuse of Chapter
> 7 continues today given easy-credit practices involving
> signature loans and credit cards. . . . §707(b) addresses a type
> of bankruptcy case - consumer debt - especially liable to
> abuse and deserving review.  (citation omitted).

> * * *

> While consumer debtors for the most part "consume" the
> benefits acquired by their debt, it is reasonable to assume
> most business debtors accrue debt to obtain tangible, secured
> business assets, which thereby gives creditors more protection
> in recovering those assets and conceivably lessons the
> possibility of bankruptcy abuse.  Therefore, in enacting
> §707(b), Congress addressed the more immediate concern it
> had with consumer abuse of Chapter 7 and the bankruptcy
> courts' failure to dismiss abusive consumer petitions.  In
> doing so, it was not necessary for Congress to similarly
> address business debtor abuse.  (citation omitted).

Based on the above, we conclude a "reasonably conceivable state of facts" exists providing a rational basis for the separate classification and treatment of consumer and business debtors under 11 U.S.C. §707. Specifically, we find it reasonable Congress enacted §707(b) to counter Chapter 7 abuse by consumers who amass debt through easy credit practices, consume the items purchased, and then seek discharge of their debt even when able to pay. A rational relationship exists between Congress singling out consumer debtors for dismissal for substantial abuse under §707(b) and the government's legitimate purpose in preventing consumer abuse, reasonably protecting creditors and empowering the courts with a mechanism to more readily dismiss substantially abusive consumer petitions.

Stewart, 175 F.3d at 813.

The changes made by BAPCPA to Section 707(b) were expressly intended to address the identical, legitimate concerns noted by the Tenth Circuit in Stewart, and were Congress' attempt to bring uniformity to the law concerning abuse of chapter 7 by consumer debtors. See Armstrong, 370 B.R. at 328; Wilson, 356 B.R. at 116-17; Fowler, 349 B.R. at 420-21. The Tenth Circuit in Stewart found that the distinction between consumer and business debtors under the pre-BAPCPA version of Section 707(b) did not violate the due process clause. This finding is at least equally, if not more, applicable in the context of the changes in Section 707(b) through BAPCPA.

On the one hand, I have the disparity of treatment between consumer and business debtors in Section 707(b), as amended by BAPCPA. On the other hand, I have the legitimate governmental purpose of preventing abuse of chapter 7 by consumer debtors and providing the courts with a uniform procedure to identify more easily and

29

dismiss abusive consumer chapter 7 debtors.  Stewart, 175 F.3d at 813.  I find a rational

relationship between the disparate treatment of the two classes of debtors and the

legitimate goal of preventing abuse by consumer debtors.  Section 707(b), as amended by

BAPCPA, does not violate equal protection aspects of the due process clause of the Fifth

Amendment to the United States Constitution.[24]


# V. CONCLUSION


For the reasons stated throughout the discussion above, I conclude that (1.)

Debtor's debts are primarily consumer debts under Section 101(8), (2.) application of the

means test outlined in Section 707(b) to Debtor results in the presumption of abuse, (3.)

---

[24]Debtor argues that the disparate treatment afforded consumer and business debtors is demonstrated in the result reached by the Third Circuit in Perlin v. Hitachi Capital America Corp., 497 F.3d 364 (3d Cir. 2007.  In Perlin, the Third Circuit affirmed the decision of the bankruptcy court denying a creditor's motion to dismiss pursuant to Section 707(a).  The Third Circuit affirmed the bankruptcy court decision that the business debtor in Perlin had filed his chapter 7 petition in good faith, notwithstanding the fact that he had a substantial income and a comfortable lifestyle.  The outcome in Perlin, however it might demonstrate the disparate treatment of different classes of debtors under Section 707, does not support the proposition that such disparate treatment is inappropriate.

Debtor fails to persuade me that no rational basis exists for the disparate treatment between business and consumer debtors under Section 707(b), as amended by BAPCPA.  An economic classification does not fail the rational relation test simply because in practice it results in some inequality.  Stewart, 175 F.3d at 812 citing Dandridge v. Williams, 397 U.S. 471, 485 (1970).  To the contrary, I find, for the reasons expressed in the body of this Memorandum Opinion, that a rational basis does in fact exist for the distinction between consumer and business debtors in Section 707(b), as amended by BAPCPA, and that Section 707 does not violate equal protection aspects of the due process clause of the Fifth Amendment to the United States Constitution.

Debtor failed to demonstrate any special circumstances to rebut the presumption of abuse,

(4.) the totality of the circumstances of Debtor's financial situation demonstrate his abuse

of the provisions of chapter 7, and (5.) Section 707(b), as amended by BAPCPA, does not

violate equal protection principles of the due process clause of the Fifth Amendment to

the United States Constitution.  I will therefore dismiss this case unless Debtor converts

this case to either chapter 11 or chapter 13, pursuant to 11 U.S.C. §707(b)(1), within ten

days of the date of this Memorandum Opinion and the accompanying Order Granting the

United States Trustee's Motion To Dismiss Pursuant to U.S.C. §707(b).  See In re

Lenton, 358 B.R. 651, 666 (Bankr. E.D. Pa. 2006).  An Order consistent with this

Memorandum Opinion shall be entered.


**Date: January 22, 2008**

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ROGER M. NAUT, | : | No. 07-20280REF |
| Debtor | : | Chapter 7 |

### ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. §707(b)

AND NOW, this 22nd day of January, 2008, upon my consideration of the United States Trustee's Motion To Dismiss Pursuant to U.S.C. §707(b) (the "Motion To Dismiss") and the Response thereto filed by Debtor, upon my consideration of the testimony and exhibits presented in the May 31, 2007 hearing and the briefs filed by the parties, and based upon the findings of fact, conclusions of law, and discussion in the foregoing Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion To Dismiss is hereby GRANTED and this case shall be and is hereby DISMISSED effective February 4, 2008, unless Debtor converts this case to a case under chapter 11 or chapter 13 on or before February 1, 2008.

BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge